UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| E. COAST AESTHETIC SURGERY, P.C. o/a/o CAMELIA A., LEONARD C., and PETER E., <br><br> Plaintiff, <br><br> v. <br><br> UNITEDHEALTHCARE, <br><br> Defendant. | Civ. No.: 17-13595 <br><br> OPINION |

    Plaintiff East Coast Aesthetic Surgery, P.C., on assignments of Camelia A., Leonard C., and Peter E. ("Patients"), filed suit against Defendant UnitedHealthcare, seeking to recover the entirety of payment for services rendered under the Employee Retirement Income Security Act of 1974 ("ERISA") and New Jersey state law. Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). This Court has jurisdiction under 28 U.S.C. §§ 1331, 1376 and decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated herein, Defendant's motion to dismiss is **GRANTED**.

### I.    BACKGROUND

    Plaintiff, as assignee, seeks reimbursement of underpaid benefits from Defendant over emergency medical services rendered to Patients. Compl. ¶¶ 3–10, 18, ECF No. 1. At all relevant times, Patients were beneficiaries in Defendant's ERISA-governed insurance plans (the "Plans"). *Id.* ¶¶ 3, 5; *see* Decl. of Maryann Britto ¶¶ 1–5, ECF No. 11-1 ("Britto Decl."); Decl. of Mabel Suzanne Fairley ¶¶ 1–5, ECF No. 11-5 ("Fairley Decl."). And at all relevant times, Plaintiff was an out-of-network healthcare provider that had no contract with Defendant. Compl. ¶ 13.

    After exhausting its administrative appeals, Plaintiff filed suit, bringing a claim for failure to comply with emergency cost sharing under New Jersey Administrative Code § 11:4–37.3 (Count One), *id.* ¶¶ 11–14, as well as two ERISA-based claims for failure to make all payments under a member's plan under 29 U.S.C. § 1132(a)(1)(B) (Count Two), *id.* ¶¶ 15–22, and breach of fiduciary and co-fiduciary duties under 29 U.S.C. §§ 1132(a)(3), 1104(a)(1), and 1105(a) (Count Three), *id.* ¶¶ 24–31.

    Defendant moves to dismiss, arguing Plaintiff lacks standing to plead its ERISA benefit claim because the Plans contain valid and enforceable anti-assignment clauses. *See* Def.'s Mem. of Law 16–19, ECF No. 11-8. Defendant also argues Plaintiff's breach

1

of fiduciary duty claim is duplicative of its benefits claim. *Id.* at 19–20. Lastly, Defendant argues ERISA preemption applies to Plaintiff's state law claim and, in any event, the regulation forming the basis for the claim provides no private right of action. *Id.* at 10–16.

Plaintiff opposes with a litany of arguments as to standing, despite the Plans' anti-assignment clause language. *See* Pl.'s Opp'n Br. 13–25, ECF No. 17; Pl.'s Sur-Reply Letter 1–2, ECF No. 24. Plaintiff then argues its state law claim survives ERISA preemption and that the regulation allows private party suits. *See id.* at 8–13. Defendant filed a reply, essentially restating its original arguments. *See* Def.'s Reply Mem. of Law, ECF No. 9.

## II. LEGAL STANDARD

When a defendant challenges a plaintiff's standing to allege an ERISA claim, courts generally apply the Rule 12(b)(6) standard, which provides for dismissing a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. *See N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015) (citations omitted). The moving party bears the burden to show no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted). "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record[,]" including "a document *integral to or explicitly relied* upon in the complaint . . . ." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (emphasis in original) (quotation marks and citations omitted).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). In other words, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*Twombly*, 550 U.S. at 570). While "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. DISCUSSION

Defendant challenges Plaintiff's standing to bring the ERISA claims based on the anti-assignment clauses found in the Plans' documents, limiting Patients from assigning their benefits. *See* Def.'s Mem of Law at 4–7, 16–19. As to Peter E. and Camelia A.'s Plans, the anti-assignment clauses read as follows:

> This Certificate is not assignable by Group without Our written consent. ***Any benefits under this Certificate are not assignable by any Member***

> *without Our written consent*. In addition, This Agreement shall not confer any rights or obligations on third parties except as specifically provided herein.

Britto Decl., Ex. A (PETER E. 000069), Ex. B (CAMELIA A. 000103), Ex. C (CAMELIA A. 000236) (emphasis added).[1] And as to Leonard C.'s Plan, the relevant anti-assignment clause provides that: "**Coverage may be assigned *only with the consent of [United HealthCare Services LLC]*.**" Fairley Decl., Ex. D (LEONARD C. 000068) (emphasis added).[2]

The Third Circuit has now held that anti-assignment clauses in ERISA plans are enforceable. *See Am. Orthopedic & Sports Med. v. Independence Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d. Cir 2018) ("We now . . . hold that anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable.") [hereinafter "*American Orthopedic*"]. The anti-assignment clause in that case read, "[t]he right of a Member to receive benefit payments under this Program is personal to the Member and *is not assignable* in whole or in part to any person, Hospital, or other entity[.]" *Id*. at 448 (emphasis in original).

*American Orthopedic* is anathema to Plaintiff's Complaint. Plaintiff contends the anti-assignment clauses are unenforceable because "[t]hese provisions simply do not manifest the intent to limit the Patients' *power* to assign . . . because it does not use the words void or invalid or any of the other language" found in a case that Plaintiff cites in support of its argument. *See* Pl.'s Opp'n Br. at 16. "The anti-assignment clause in *American Orthopedic* also did not contain the words 'void' or 'invalid,' and yet the Third Circuit still determined that the clause was enforceable and that plaintiff, therefore, lacked standing to sue." *Univ. Spine Ctr. v. Anthem Blue Cross Blue Shield*, 2018 WL 2357756, *3 (D.N.J., May 24, 2018) (citing *Am. Orthopedic*, 890 F.3d at 453–55).

The anti-assignment clauses here are unambiguous and thus enforceable. Absent consent, Patients lacked authority to assign Plaintiff or anyone else the right to reimbursement. Neither "a participant or beneficiary," Plaintiff lacks standing to bring a civil action "to recover benefits due . . . under the terms of [its Plans], to enforce [its] rights under the terms of [its Plans], or to clarify [its] rights to future benefits under the terms of [its Plans]." *See* 29 U.S.C. § 1132(a)(1)(B). No amendment could cure the

---

[1] Camelia A.'s Plans contain the same Reimbursement Rider, wherein "Member may not assign [he]r right to reimbursement under this Certificate to a Non-Network Provider without Our consent. However, in Our discretion, We may pay a Non-Network Provider directly." Britto Decl., Ex. B (CAMELIA A. 000117), Ex. C (CAMELIA A. 000244).

[2] Plaintiff's direct quote of the anti-assignment clause in Leonard C.'s Plan omitted the word "only." Pl.'s Opp'n Br. at 21. Had it cited or read the clause correctly, Plaintiff may have reconsidered arguing how "it is not clear that coverage (or benefits and/or payment) may not be assigned without [Defendant's] consent." *Id.*

deficient ERISA claims. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Thus, Counts Two and Three are **DISMISSED WITH PREJUDICE**.

In Count One, Plaintiff alleges a violation of New Jersey Administrative Code § 11:4–37.3 and seeks the same reimbursement of health benefits. Yet, ERISA completely preempts the state law claim.[3] *See* 29 U.S.C. § 1144(a) (noting ERISA preempts "any and all State laws insofar as they . . . relate to any employee benefit plan"). Indeed, Plaintiff insists ERISA governs the Patients' Plans. Compl ¶ 5. Thus, Count One is **DISMISSED WITH PREJUDICE**.[4]

### IV. CONCLUSION

Accordingly, Defendant's motion to dismiss is **GRANTED**. Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**. An appropriate Order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Dated: June 28, 2018**

---

[3] Plaintiff attempts to salvage its state law claim, arguing ERISA's "saving clause" thwarts preemption. Not so. ERISA's "deemer clause," 29 U.S.C. § 1144(b)(2)(B), prohibits "back-door attempts by states to regulate core ERISA concerns in the guise of insurance regulation." *FMC Corp. v. Holliday*, 498 U.S. 52, 56 (1990) (quotation marks and citation omitted). The Supreme Court "read the deemer clause to exempt self-funded ERISA plans [like Leonard C.'s] from state laws that 'regulate insuranc[e]' within the meaning of the saving clause." *Id.* at 61; Fairley Decl., Ex. D (LEONARD C. 000060).

[4] The Court need not discuss Plaintiff's contention that New Jersey Administrative Code § 11:4–37.3 contains an implied private right of action beyond mentioning that same regulation authorizes the Commissioner of the New Jersey Department of Banking and Insurance to enforce regulations and impose penalties on non-compliant insurance companies. *See* N.J. Admin. Code §§ 11:4–37.5, 37.2; *R.J. Gaydos Ins. Agency, Inc. v. Nat. Consumer Ins. Co.*, 773 A.2d 1132, 1148 (N.J. 2001) (finding no implied private right of action in light of "comprehensive regulation" governing the insurance industry).